Gbovee, J.
The Northern Transportation Company contracted to carry the wheat in question to Ogdensburgh, and deliver it to the consignee there as per the following margin: “ J. & J. Rogers, A usable Forks, N. Y.; care of D, C. Brown, Agent, Ogdensburgh.” To give a correct construction to this margin, the extrinsic facts must be considered. From these it appears that the Transportation Company was a - common carrier by water of grain, etc., from the lake ports to Ogdensburgh; some of which was to be delivered to the owners there, and some to be carried east upon the railroad operated by the defendants, and some by boats to Montreal; that the defendants were in possession of and operating a railroad as common carriers between Ogdensburgh and Rouse’s Point, and had the possession of an elevator at the.' former place, into which the Transportation Company unloaded all the grain brought by it to Ogdensburgh, irrespective of its further destination; that D. C. Brown was the agent of the defendants at Ogdensburgh, and, as such, had entire charge of their transportation business at that place; • that J. & J. Rogers, the plaintiffs, were partners, doing busi-" ness at Ausable Forks, N. Y., as millers and flour dealers; that they had carried on this business for several years at the same place, and had, during this time, purchased grain at various ports upon the lakes, and had the same shipped from there by water to Ogdensburgh, and from there carried over *265 the road operated by the defendant in 1864 to Rouse’s Point, where it was taken by another.carrier upon Lake Champlain and carried to another point upon the lake, where it was delivered to teamsters of the plaintiffs to be hauled to the mills at the Forks. Under these facts, the question is what was the legal effect of the direction in the margin, care of D. C. Brown, Agent, Ogdensburgh? Was -it as contended by the plaintiffs, or a direction to deliver to the defendants at that place, or, as claimed by the defendants, a direction to deliver to Brown as the agent of the plaintiffs ? The determination of this question will dispose of a great number of the exceptions taken upon the trial. It should be further remarked that Brown was never in any respect the agent of the plaintiffs, unless so made by the clause in the margin in question. I think the extrinsic facts show that a delivery to the defendants was intended by the direction to deliver to Brown; in what character will hereafter be considered. He was at the time the agent of the defendants in the management of their transportation business. The wheat was to be carried by the defendants upon their road to Rouse’s Point. This appears from the words “ J. J. Rogers, Ausable Forks,” and the fact that this was the way in which property was carried from Ogdensburgh to the Forks. The name of “ Brown, agent,” was used instead of the names of the defendants; and the delivery to him as agent was as agent for the defendants—the only capacity in which he was acting at 'the time. Had Brown, at the time of the arrival of the wheat at Ogdensburgh, ceased to act as agent for the defendants, and another was acting in that capacity, the Transportation Company would have been required to deliver the wheat to the latter. It was to the agent of the defendants in the transportation business that the wheat was to be delivered, and not to Brown as an individual. It appears that grain was received in the elevator by the defendants as warehousemen, where the owners resided at Ogdensburgh or its vicinity as warehousemen and forwarders, in case it was to go down the river by boats, and as carriers when it was to be carried east *266 over the railroad by them. They insist that the wheat in question was received by them as warehousemen; and that it was "in their possession in that character at the time of its destruction by fire. If that be so the defendants are not. liable, under the finding of the referee for the loss, he having found the defendants free from negligence in respect to the fire. If their possession was as carriers they are liable, as the fire was not the result of the act of God. We have a case where property is shipped at lake ports upon boats, addressed “ J. & J. Rogers, Ausable Forks,” which the carriers are directed to deliver to the defendants at Ogdensburgh, who are carriers by rail from that place to Rouse’s Point, over whose road the property must pass to reach its ultimate destination. Upon the receipt of this property by the defendants, with knowledge of these facts, can there be any doubt that it was received by them as carrier's, in the absence of any proof of its being otherwise received? The, receipt by a carrier of property, so marked as to show that it is to be carried over his route, in the absence of other evidence, shows that he received it for the purpose of such carriage by him. (Witbeck v. Holland, 45 N. Y., 13.) The evidence is conclusive that Brown knew that the wheat in question was to be carried over the road on its way to its ultimate destination at the Forks. When it was received by the defendants with this knowledge, in the absence of other proof, it must be assumed that they received it as carriers for this purpose. Its receipt by the defendants under these circumstances showed prima faoie that their possession was as carriers, and that they were responsible as such. This shows that Brown was entirely mistaken in the assumption that he was agent for the plaintiffs, and received and had possession of the property as such, or had any right as such to direct or control in respect to storing the wheat at Ogdensburgh, or the time or manner of its transportation to Rouse’s Point. It is conceded that the defendants are liable in case their possession was as carriers at the time of its destruction by fire. This having been *267 ¡prima fade proved, the inquiry is whether there were any facts proved that showed the possession to have been different. It is insisted by the counsel for the appellants that the evidence proved that although the wheat was ultimately to be carried to Rouse’s Point by the defendants, that this was not to be done immediately, nor until orders to that effect were given by the plaintiffs, and that in the meantime the. wheat was stored for them by the defendants. If this be true the defendants were not in possession of the property as carriers. To make it such, they must have received it for immediate carriage in, the due course of their business; and if so received, they were liable as carriers during the time it was detained by them for their own convenience, or otherwise, unless such detention was directed or sanctioned by the plaintiffs. Excluding the idea of Brown’s agency for the plaintffs, there was no proof of any such direction or sanction by the plaintiffs. It is urged that such a direction or sanction should have been found by the referee from the custom of carrying grain over the road for the plaintiffs. It was proved by Brown that the plaintiffs usually bagged their wheat upon the cars at Rouse’s Point, before it was put upon the boat, and that they could not bag more than one or two car-loads a day, and that for this reason but one or two car-loads of their wheat were sent in a day. One of the plaintiffs testified that they did bag their wheat at Rouse’s Point, and preferred to do so, but that no instructions were ever given by the plaintiffs to the defendants to store or delay any of their wheat at Rouse’s Point. That they received it as forwarded, and if it came as fast as they wanted to use it they were quiet, if not, they hurried up the defendants. That they could have received any quantity sent. Brown does not testify that any instructions were ever given by the plaintiffs in respect to the time when the wheat should be carried, or the quantity at any time, but he says he knew they put it in bags at Rouse’s Point, and he forwarded it in quantities to accommodate them in this respect. This was the result of his own volition, uninfluenced by any suggestion from the plaintiffs. *268 This does not show any direction by the plaintiffs for storing or obtaining the wheat at Ogdensburgh. The defendants were at liberty to carry it all to Rouse’s Point directly upon its receipt. The exceptions taken to the findings of fact by thq referee are not tenable, ás evidence was given tending to prove every fact so found. The exceptions to the refusal of the referee to find additional facts are not well taken. If the appellants. deemed it necessary for the protection of their rights that the referee should pass upon additional questions of fact, they should have made amotion in the Supreme Court for an order sending back the report with instructions to the referee to add findings upon such questions. (Van Slyke v. Hyatt, 46 N. Y., 259; Lewis v. Palmer, decided by this court at this term.) The contracts sent by the agent of the. Transportation Company for the carriage of. the wheat by the defendants from Ogdensburgh to Rouse’s Point were not competent evidence against the defendants. The evidence failed to show that he was authorized to make any such contracts for the defendants, or that they had any knowledge of their being sent. The referee, therefore, erred in receiving it. The counsel for the appellants insist that for this error the judgment must be reversed. He is right in this, unless the case show that the appellants could not have sustained any injury from such error. The present case does show this. Striking the incompetent evidence from the case, there is no view of the competent evidence that the referee would have been authorized to take that would have relieved the defendants from liability. This proved that the defendants received the wheat to be carried over their road in the usual course of business. There was nothing shown that would have justified a finding that their possession was other than as carriers. While so in their possession it was destroyed by an accidental fire. The competent testimony not only authorized but required a finding of these facts by the referee. The defendants could not therefore have been in any way injured by the reception of the incompetent evidence.
The counsel for the appellants cited Barren v. Eldbridge (100 *269 Mass., 45 5), as showing that the possession of the defendants was as warehousemen and not as carriers. This case, as reported, has no bearing upon the character of the defendants’ possession in the present case. From that it appears that the court having arrived at the conclusion that the property was not delivered for immediate transportation, but to be kept by the defendants awaiting future orders of the plaintiff directing further transportation, held that the possession of the defendants was that of warehousemen and not carriers. This legal conclusion from the facts was clearly right. But the counsel has, in addition to the report, produced the evidence in the case upon which the above facts were found by the court. From this it appears that the property was destroyed by the same fire that destroyed the grain in question in the present case. This has no bearing upon the character of the defendants’ possession of this grain. I have examined the evidence in that case, from which it appears that the corn and flour were delivered to the defendants to be kept until the plaintiff gave orders for its shipment. As to what was the character of the possession is not quite so clear. But the evidence upon which the court held that the defendants held this as warehousemen, and not as carriers, differs from that in the present case. Hence, if the court was right as to the wheat in that case, it does not determine the question in this. The judgment appealed from must be affirmed with costs.
All concur.
Judgment affirmed.